UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20548-Civ-COOKE/TORRES

ESTATE OF JORGE LUIS ARROYO, JR.,
by and through JORGE ARROYO, SR.,
and NOEMI IZQUEIRDO, Co-Personal
Representatives and surviving parents,

    Plaintiff,

vs.

INFINITY INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT

After a horrific automobile accident that resulted in two deaths and a critically-injured passenger, the Estate of Jorge Luis Arroyo, Jr. ("Plaintiff" or "Estate") brings this first-party insurance action against Infinity Indemnity Insurance Company ("Defendant" or "Infinity"). It seeks uninsured motorist ("UM") benefits and damages from Infinity's alleged bad faith in failing to provide the same. Each side has filed a motion for partial summary judgment (ECF Nos. 29, 78). Both motions are denied.

### I.    BACKGROUND

Jorge Luis Arroyo, Jr. ("Arroyo") died in an automobile accident on October 9, 2009. ECF No. 105 at ¶ 5(vi). At the time, he was driving a vehicle covered under his Infinity automobile insurance policy. *Id.* ¶ 5(iii), (vii). Arroyo had obtained the insurance coverage in June 2009 through Infinity's authorized agents, Insurance USA & Associates, Inc. and Nicole Antini ("Antini). *Id.* ¶ 5(i), (ii). The parties agree Infinity's insurance policy provided coverage for property damage liability and personal injury protection up to $10,000 each. *Id.* ¶ 5(iv). They disagree about whether bodily injury coverage, and its UM benefits, was included in Arroyo's policy.

Infinity initially denied the Estate's insurance claims due to non-payment of the policy premium. ECF No. 86-3; ECF No. 105 at ¶ 5(vii). But once it was determined that

1

Arroyo may have missed Infinity's prior payment notices because the address attached to the policy was associated with an animal hospital and not Arroyo's residence, *see* ECF No. 86-6, Infinity rescinded its cancellation and paid the policy limits to the Estate for property damage liability and personal injury protection. ECF No. 86-7. The parties dispute the roles Infinity's agents and Arroyo played in listing an incorrect policy address for Arroyo.

In December 2009, Infinity also issued three different Statements of Certification, pursuant to Plaintiff's requests and Florida law. ECF No. 105 at ¶ 5(ix) – (xi). Attached to each of these certifications was a copy of Arroyo's insurance declarations page that indicated UM coverage was rejected. *See* ECF No. 79-17 at 3. The cover letter to the second Statement of Certification indicated that bodily injury coverage was included, though it also stated "NO UM . . . No policy in effect for the date of loss." ECF No. 79-19 at 2. Infinity issued an amended third Statement of Certification that removed any mention of bodily injury coverage in its cover letter and reiterated that no UM benefits applied. ECF No. 79-20 at 3. While these statements included copies of Arroyo's purported signature on various policy documents, they did not include a copy of Infinity's bodily injury waiver form with Arroyo's signature. The form was not produced until years later, during a state court action involving the passenger in Arroyo's vehicle the night of the accident. *See* ECF No. 79-25. Arroyo's mother also claims she overheard Arroyo over the phone expressly requesting bodily injury and related UM coverage to an insurance agent, possibly Antini, at the automobile dealership where Arroyo first bought the insured vehicle. *See generally* ECF No. 79-11. Taken together, the Estate believes Arroyo had UM benefits and questions the authenticity of Arroyo's signature on Infinity's bodily injury waiver form.

The Estate filed two Civil Remedy Notices ("CRNs"), one in May 2010 and another in July 2013, with Florida's Department of Financial Services ("DFS"). ECF No. 105 at ¶ 5(xii), (xvi). Infinity responded to both CRNs, contesting substantive and procedural issues in each. *Id.* ¶ 5(xiv), (xvii). Infinity disputes the sufficiency of these CRNs in its partial summary judgment motion.

In May 2011, the Estate initiated a state court action against Infinity and underinsured tortfeasor Gustavo Rodriguez ("Rodriguez"). *Id.* ¶ 5(xv). After Infinity filed a motion to dismiss in the state matter, the Estate voluntarily dismissed Infinity from the case. *Id.* ¶ 5(xix). After the dismissal, the Estate obtained a default judgment against Rodriguez

2

for over $4 million. *Id.* ¶ 5(xx), (xxi). The parties dispute whether Infinity may raise certain affirmative defenses in the present matter that could have been developed in the state court action.

## II.  LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this assessment, a court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 – 48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the

3

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III.   DISCUSSION

The parties seek partial summary judgment for different parts of this action. Infinity seeks summary judgment on the Estate's bad faith claim on the grounds that the CRN submitted was deficient as a matter of law, and that no reasonable jury could find Infinity acted in bad faith under the totality of the circumstances. Plaintiff seeks summary judgment on the fact that Infinity provided Arroyo with UM benefits, and that some of Infinity's affirmative defenses are barred in this action. I do not find summary judgment is suitable on any of these issues.

A.  Civil Remedy Notice

Infinity contends the 2013 CRN filing[1] was not specific enough to afford Infinity an opportunity to cure whatever bad faith issues transpired in this case. I disagree. The CRN was not detailed, but it provided Infinity notice that payment of UM benefits was at the crux of the Estate's grievances.

As a condition precedent to bringing a first-party, bad faith insurance claim, Florida law requires the insured to give "60 days' written notice of the violation. If the [DFS] returns a notice for lack of specificity, the 60–day time period shall not begin until a proper notice is filed." Fla. Stat. § 624.155(3)(a). The CRN's purpose "is to provide insurers one last opportunity to settle a claim with the insured to avoid unnecessary bad faith litigation. . . . However, the [CRN] must be specific enough to provide insurers notice of the wrongdoing so the insurer can cure the same within sixty days." *Valenti v. Unum Life Ins. Co. of Am.*, No. 8:04CV1615T-30TGW, 2006 WL 1627276, at *2 (M.D. Fla. June 6, 2006). At a minimum, a party's CRN must meet five statutory requirements:

> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

---

[1] The Estate filed two nearly-identical CRNs, one in 2010 and another in 2013 when it retained new counsel. While my reasoning applies to both CRNs, I reference the 2013 CRN alone since Infinity specifically challenges that CRN as it was the only one attached to Plaintiff's operative Complaint.

4

>    2. The facts and circumstances giving rise to the violation.
>    3. The name of any individual involved in the violation.
>    4. Reference to specific policy language that is relevant in the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.
>    5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

*Id.* § 624.155(3)(b).

Infinity argues the CRN failed the second and fourth statutory requirements. While the statute has been "strictly construed," *Lopez v. Geico Cas. Co.*, 968 F. Supp. 2d 1202, 1208 (S.D. Fla. 2013), an insured is not "required to incorporate every allegation from its complaint into its notice." *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, No. 08-60254-CIV, 2008 WL 3889577, at *4 (S.D. Fla. Aug. 20, 2008). So long as an insurer is on notice of the CRN's bad faith claims through "common sense," *Altheim v. GEICO Gen. Ins. Co.*, No. 8:10-CV-156-T-24 TBM, 2011 WL 161050, at *4 (M.D. Fla. Jan. 18, 2011), and not through a "guessing game," *Eads v. Allstate Indem. Co.*, No. 14-CIV-61791, 2014 WL 6453178, at *5 (S.D. Fla. Nov. 17, 2014), a court may find a CRN satisfactory.

The Estate has provided sufficient details in its CRN to provide Infinity notice of the UM benefits at issue here. The CRN's facts and circumstances portion states, "Infinity is refusing to honor the insured's U.M. claim and is also refusing to defend a third party liability claim." ECF No. 30-14 at 4. Though the statement is bare, Infinity's common sense would have alerted it to the Estate's belief that Arroyo was owed UM benefits. Simple CRN fact statements have been previously accepted in other Florida-based bad faith insurance cases when the insurer could recognize the primary basis of an insured's bad faith claims. *See, e.g.*, *Altheim*, No. 8:10-CV-156-T-24 TBM, 2011 WL 161050, at *4; *Tropical Paradise Resorts*, No. 08-60254-CIV, 2008 WL 3889577, at *4. In addition, the DFS did not reject the CRN as vague, which it is permitted to do under Florida law. *See* Fla. Stat. § 624.155(3)(c) ("Within 20 days of receipt of the notice, the [DFS] may return any notice that does not provide the specific information required by this section, and the [DFS] shall indicate the specific deficiencies contained in the notice."). Though not determinative, a court may use the DFS's acceptance as evidence to support the conclusion that the CRN was adequately specific. *See, e.g.*, *Eads*, No. 14-CIV-61791, 2014 WL 6453178, at *5; *Altheim*, No. 8:10-CV-

5

156-T-24 TBM, 2011 WL 161050, at *4.[2]

The Estate was also not required in the CRN to reference specific language from Arroyo's policy agreement. Since "an action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract . . . it was unnecessary for [the Estate] to reference specific policy language." *Tropical Paradise Resorts,* No. 08-60254-CIV, 2008 WL 3889577, at *4 (internal quotation marks omitted). What is more, referencing the specific policy language here would have been futile since the Estate thinks the insurance policy documents Infinity has provided do not reflect Arroyo's full benefits, including bodily injury and UM coverage. Infinity also quibbles with the CRN's failure to disclose Arroyo's mother's alleged awareness of UM benefits. But Infinity was already on notice about the bad faith claims against it, regardless of Arroyo's mother. Infinity can undeniably offer doubts at trial about Arroyo's mother's cooperation and credibility during Infinity's investigation, but those issues are related to whether Infinity acted in bad faith, not whether the CRN was sufficient.

B. Bad Faith

Infinity also asserts summary judgment is appropriate on the Estate's bad faith claims because no reasonable jury could find that it acted in bad faith under the totality of the circumstances. To support its argument, Infinity points to evidence it believes shows Arroyo had no UM benefits (discussed in the next section), and to Arroyo's intoxication during the time of the accident.

"[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the totality of the circumstances standard." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004). The "focus in a bad faith case is not on the actions of the claimant but . . . on those of the insurer in fulfilling its obligations to the insured." *Berges*, 896 So. 2d at 677. The following factors are relevant in finding whether an insurer acted in bad faith:

---

[2] Infinity raises doubts about how often DFS wields its review power with its Affidavit of Tasha Carter ("Carter"), the Director of the Division of Consumer Services at the DFS. ECF No. 50-2. Carter's Affidavit indicates that reviews may take place by request, but it does not specify when or how. *See id.* at ¶ 4 ("Unless specifically requested to do so, the Department does not review or analyze the CRN . . . ."). Even so, the facts and circumstances outlined in the CRN were sufficient to place Infinity on notice of its purported wrongdoing.

>(1) "[E]fforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds"; (2) "the substance of the coverage dispute or the weight of legal authority on the coverage issue"; (3) "the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage"; and (4) "efforts made by the insurer to settle the liability claim in the face of the coverage dispute."

*Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1188 (11th Cir. 2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So.2d 55, 63 (Fla. 1995)). Because the totality of the circumstances is often a fact-based inquiry, "the issue of bad faith is ordinarily a question for the jury[.]" *Berges*, 896 So. 2d at 688.

Arroyo's level of intoxication during the accident may prove useful in determining whether the Estate can recover damages, but it is not dispositive of the bad faith issue at this stage of the litigation. The Florida Highway Patrol's homicide report has not been authenticated, so I cannot consider it in my current analysis. *See Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010) ("To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *see also Hill v. Lazarou Enters., Inc.*, No. 10-61479-CIV, 2011 WL 124630, at *3 (S.D. Fla. Jan. 14, 2011). Further, while Florida law bars recovery for damages to a plaintiff who had a blood alcohol level of 0.08% during his injury and more than 50% liable for his own harm, Fla. Stat. § 768.36, the level of fault is a jury question. *See Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1377 (S.D. Fla. 2013).

C. <u>Uninsured Motorist Benefits</u>

Both parties maintain summary judgment is warranted over the issue of the existence of UM benefits. Because there is a genuine dispute over this material fact, I cannot grant summary judgment for either party.

Each party raises plausible arguments from the record for their position on UM benefits. Notably, Infinity cites to policy documents that indicate Arroyo had rejected UM coverage, Arroyo's non-payment of his premiums, and Arroyo's alleged misrepresentations to attain Infinity's insurance policy. To support its position, the Estate points to the delay in receiving copies of Arroyo's policy documents and his questionable waiver signatures, the

7

actions of Infinity's agents and its delivery of policy documents to an incorrect address, and Arroyo's mother's insistence that she was present when Arroyo requested bodily injury and UM coverage. Parties contest the reliability of each of these items and others, but resolving them now would encroach on the jury's role as the trier of fact. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

### D.  Affirmative Defenses

The Estate also argues Infinity is precluded from raising any of its four liability defenses because they could have been brought up in a state court action, in which Infinity initially participated, that awarded a $4 million default judgment in favor of the Estate against the underinsured tortfeasor. The Estate is incorrect and Infinity's affirmative defenses are preserved here.

In general, an injured party has the choice of suing an uninsured tortfeasor and to collect on the uninsured's assets, or suing the UM insurance carrier and to recover UM benefits under the carrier's plan. *See Allstate Ins. Co. v. Boynton*, 486 So. 2d 552, 557 (Fla. 1986). If the injured party chooses to sue the carrier, then the "carrier effectually stands in the uninsured motorist's shoes and can raise and assert any defense that the uninsured motorist could urge." *Id.* The limits on defenses that insurers can use in third-party liability cases are inapposite in first-party insurance actions where the insurer has no duty to defend and the interests of the insured and insurer are adverse. *See Legion Ins. Co. v. Moore*, 846 So. 2d 1183, 1187 (Fla. Dist. Ct. App. 2003). To be sure, an insurer may be bound to a separate UM-related judgment that occurs prior to a bad faith proceeding, if the earlier UM action fully determined the extent of the insured's damages and the insurer had an opportunity to appeal the damages assessment. *See Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1224 – 26 (Fla. 2016). But a default judgment against a non-carrier party in an earlier UM action "does not preclude [the carrier] from defending on liability issues." *State Farm Mut. Auto. Ins. Co. v. Clark*, 544 So. 2d 1141, 1142 (Fla. Dist. Ct. App. 1989).

Infinity can plainly assert its liability defenses here. It was not a party to the state court action when default judgment was entered. In fact, Plaintiff voluntarily dismissed

8

Infinity from the state court action after Infinity filed a motion to dismiss. Therefore, Infinity would have had no opportunity to appeal the merits and the judgment in that case. Instead, Infinity may advance any defense here that the underinsured tortfeasor could have made in the state court action. That the tortfeasor failed to raise any defenses and defaulted in his action does not change my conclusion. Infinity can bring any defense that could have been raised; it is not limited to defenses that were in fact raised in the state court action.

### IV.   CONCLUSION

For the reasons stated, Defendant's Motion for Partial Summary Judgment (ECF No. 29) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 78) are both **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 18th day of August 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*