UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20548-Civ-COOKE/TORRES

ESTATE OF JORGE LUIS ARROYO, JR.,
by and through JORGE ARROYO, SR.,
and NOEMI IZQUEIRDO, Co-Personal
Representatives and surviving parents,

    Plaintiff,

vs.

INFINITY INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S *DAUBERT* MOTIONS

    Infinity Indemnity Insurance Company ("Defendant" or "Infinity") challenges the testimony of the Estate of Jorge Luis Arroyo, Jr.'s ("Plaintiff" or "Estate") two expert witnesses in this case. For the reasons below, Defendant's *Daubert* Motion to Exclude or Limit Testimony of Plaintiff's Expert Witness, Lewis N. Jack, Jr. (ECF No. 80), is granted, while its *Daubert* Motion to Exclude or Limit Testimony of Plaintiff's Expert Witness, James P. Schratz (ECF No. 81), is granted in part and denied in part.

### I. BACKGROUND

    The background facts of this case are detailed in my Order Denying Motions for Partial Summary Judgment. *See* ECF No. 115. Defendant seeks to limit or exclude the expert testimony of Lewis N. Jack, Jr. ("Jack") and James P. Schratz ("Schratz"). Plaintiff submits the experts to opine on Infinity's handling of the Estate's insurance claims and the extent of damages warranted in this case.

    Infinity questions Jack's credentials as an attorney who has never adjusted casualty claims or been licensed to do so in Florida. On Schratz, Infinity doubts the relevance of his prior insurance claims handling experiences, including Schratz never personally handling claims in Florida. Infinity further contends that much of both experts' opinions are based on proscribed determinations of credibility and factual disputes reserved for the jury.

1

## II.   LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It states the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A district court has the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This gatekeeping function applies to "all expert testimony," whether based on "scientific knowledge" or "based on technical and other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In performing this function, the district court's role is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

In order to determine the admissibility of expert testimony, a district court must consider three factors: (1) whether the expert is qualified to testify competently about the subject matter he intends to address, (2) whether the expert's methodology is sufficiently reliable, and (3) whether the testimony assists the trier of fact to understand the evidence through the application of the witness's expertise. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1340 – 41 (11th Cir. 2003). The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"A witness may be qualified as an expert by scientific training, education, or experience in a pertinent field or occupation." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "A lawyer with extensive experience in a particular area of law is not necessarily qualified to provide expert testimony on proper internal processes of the

particular industry the lawyer represents." *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-Civ-COOKE/TORRES, 2015 WL 5584898, at *5 (S.D. Fla. Sept. 23, 2015) (citing additional district court cases that support the point).

When analyzing whether an expert's testimony is reliable, "Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Cincinnati Ins. Co. v. Cochran*, No. CIV.A. 99-0552-WS-C, 2005 WL 2179799, at *2 (S.D. Ala. Sept. 2, 2005). "For nonscientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. . . . A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (internal quotation marks omitted). "In the context of an expert witness testifying on the basis of specialized experience, a reliable methodology means that the witness must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts [of the case]." *Lopez*, No. 14-20654-Civ-COOKE/TORRES, 2015 WL 5584898, at *6 (internal quotation marks omitted) (alterations in original).

Under the relevance factor, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262 – 63.

3

### III.   DISCUSSION

In briefing for these motions, the Estate outlines the opinions Jack and Schratz will proffer.[1] *See* ECF Nos. 94 at 5 – 6, 95 at 5 – 6. Jack's opinions touch upon Infinity's duties to the insured, its investigation of this case, its reliance on Infinity's agents, and his belief that Infinity could and should have settled this case. Schratz's opinions mostly concern Infinity's handling of its investigation. Analyzing the admissibility of these experts' opinions with the the three factors outlined above, I find that Jack's testimony must be excluded because he is not qualified to render an opinion on insurance handling, and his remaining opinions are inadmissible. I also find that Schratz is qualified to render an opinion on the standards of insurance handling and the reasonableness of Infinity and its agents' conduct in the present case, though his other opinions are inadmissible.

A.  <u>Admissibility of Lewis N. Jack's Opinions</u>

Jack has practiced law for over forty years. He has advised insurance companies about claims handling and complying with Florida's particular insurance provisions. But he has no experience in personally handling claims, has not published any materials on the subject, and appears unfamiliar with guidelines from the Florida Department of Insurance. Like a seasoned attorney that I rejected in a similar instance, *see Lopez*, No. 14-20654-Civ-COOKE/TORRES, 2015 WL 5584898, at *5, Jack's insurance law specialty does not qualify him to opine as an expert on Infinity's handling of the Estate's insurance claim or the duties therein.[2]

Jack's remaining opinions on the credibility of witnesses and damages are also inadmissible since they are either forbidden or unreliable. An expert is not permitted to remark on the truthfulness of another witness's statements, such as Jack's assertion that one of Infinity's agents was untrustworthy. *See United States v. Henderson*, 409 F.3d 1293, 1299 (11th Cir. 2005); *State v. Townsend*, 635 So. 2d 949, 958 (Fla. 1994). Jack's opinion about the

---

[1] Plaintiff failed to meet the expert witness report disclosure requirements under Federal Rule of Civil Procedure 26(a)(2)(B). Though I have relieved Plaintiff from this expert report requirement (ECF No. 118), I must rely on the Estate's representations and the witnesses' depositions alone to understand what opinions Jack and Schratz intend to propound.

[2] This does not mean a lawyer with an insurance law specialty could never have the expertise to opine on insurance claims handling. But without additional experiences, I am hesitant to permit such opinions from Jack here. My conclusion does not impinge on a lawyer's ability to opine about other areas of a bad faith insurance case.

reasonableness of the damages total in this case is unreliable since his conclusions relate to damages in a separate state court action involving the passenger in the decedent's automobile. Put simply, Jack's assessment does not apply to the facts of this case. Without an expert witness report that attaches Jack's opinion on damages to the present action, it is unreasonable for Jack to remark on the issue now.

In lieu of the proper qualifications to speak on claims handling, and with his other opinions being either inadmissible or unreliable, there is little doubt that Jack's opinions are irrelevant to the jury. Stripped of their admissible expert testimony label, Jack's remaining thoughts amount to issues of fact the jury can assess on its own, or are ones the lawyers can include in their closing arguments. In sum, all of Jack's expert testimony must be excluded.

B. Admissibility of James P. Schratz's Opinions

Schratz is a licensed attorney who currently consults clients on claims handling techniques and procedures. He spent thirteen years working in various capacities, including claims handling, with the Fireman's Fund Insurance Company ("Fireman's Fund"). Schratz has also published several articles on claims handling during his thirty years of relevant experience. Though Schratz has not had extensive insurance claim experience in Florida, he supervised several hundred automobile liability claims in the state during his time at the Fireman's Fund and also served as an expert witness in at least one case in this district. Other Florida federal cases have not barred the expert testimony of someone with limited Florida-specific experiences, since defendants could cross-examine an expert's experiences or offer contrary evidence. *See, e.g.*, *Lopez v. Allstate Fire & Cas. Ins. Co.*, No. 14-20654-Civ-COOKE/TORRES, 2015 WL 6447497, at *2 – 3 (S.D. Fla. Oct. 26, 2015); *Bottini v. Geico Gen. Ins. Co.*, No. 8:13-CV-365-T-17AEP, 2014 WL 7273934, at *2 – 3 (M.D. Fla. Dec. 19, 2014). What is more, Schratz is not contending Infinity's compliance with Florida law. I find Schratz is qualified to opine on national industry standards of insurance company claims handling and investigation processes, and how Infinity applied them in this case.

Many of Schratz's opinions are sufficiently reliable. Schratz formed his views on Infinity's claims handling based on his over thirty years of experience in insurance claims handling and a review of substantial portions of the record in this case, including much of the relevant claims files, Infinity's best practices manual, and several depositions. Infinity can, of course, challenge Schratz's review of the full record during its cross-examination.

But Schratz's comments on the reasonableness of Infinity's claims handling and the duties therein are permissible. *See Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) ("An insurance expert may testify regarding what duties are owed by an insurance company during the claims handling process and whether the actions of the insurance company complied with those duties without offering improper legal conclusions."). Contrary to Infinity's assertions, experts are permitted to base their opinions on a certain version of disputed facts, which the jury may then assess. *See* Fed. R. Evid. 702 (advisory comm. notes) ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The [rule] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

Still, there are other opinions from Schratz that I do find inadmissible. For one, Schratz cannot mention the equal consideration doctrine, or describe the doctrine as the "industry standard" as he discusses in his deposition. *See* ECF No. 95 at 6, ¶11(a). While the doctrine exists in other Eleventh Circuit-area states, *see, e.g.*, *Delancy v. St. Paul Fire & Marine Ins. Co.,* 947 F.2d 1536, 1549 (11th Cir. 1991) (discussing Georgia's equal consideration doctrine "requires the insurer . . . give the interests of its insured the same faithful consideration it gives its own interests"), there is no evidence from the Estate, Schratz, or case law that the doctrine formally applies in Florida. Schratz can still discuss his opinions on Infinity's claims handling and investigation, and how it compares to what other insurance companies should do in similar situations, but he must not refer to or describe the doctrine itself. Any of Schratz's comments that touch upon legal conclusions are also excluded. In particular, Schratz cannot mention the standards of bad faith when it comes to insurance investigations. *See id.* at 6, ¶11(e). I do believe Schratz's thoughts on Infinity's omission of a reservation of rights are proper, however, so long as he does not proffer what the law states on issuing these documents. Separately, Schratz may not opine on the states of mind of other parties in this litigation. *See In re Trasylol Prod. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4259332, at *8 (S.D. Fla. Oct. 21, 2010) ("The question of intent or motive is a classic jury question and not one for experts."). While Schratz can cite to the problems with Infinity's claims handling and any of their agents' alleged missteps, he cannot intimate a motive or intent to any of these actions. Therefore, any mentions of Infinity "totally

6

ignor[ing] and disregard[ing] the interest of its insured," and that its agent "made material misrepresentations" are barred. *See id.* at 5, ¶10.

All of Schratz's permissible opinions will assist the jury. Schratz's insights into insurance claims handling exceeds what an average jury member may know. *See, e.g.*, *Camacho*, 13 F. Supp. 3d at 1366. In sum, Schratz's opinions on the reasonableness of Infinity's investigation compared to national standards of what insurance companies are expected to do are permissible. He cannot present the equal consideration doctrine, expound upon the legal standards in a bad faith case, or speculate about the motives of various actors.

## IV.   CONCLUSION

As outlined above, Defendant's *Daubert* Motion to Exclude or Limit Testimony of Plaintiff's Expert Witness, Lewis N. Jack, Jr. (ECF No. 80) is **GRANTED**, and its *Daubert* Motion to Exclude or Limit Testimony of Plaintiff's Expert Witness, James P. Schratz (ECF No. 81), is **GRANTED** *in part* and **DENIED** *in part*.

**DONE and ORDERED** in chambers at Miami, Florida, this 29th day of August 2016.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*